

U.S. Department of Justice

United States Attorney
Eastern District of New York

TH:MWG/SMS
F. #2023R00059

271 Cadman Plaza East
Brooklyn, New York 11201

December 6, 2023

<u>By ECF and E-Mail</u>

The Honorable Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: <u>United States v. Edwin Spears</u>
           <u>Case No. 23-MJ-1049</u>

Dear Judge Bulsara:

      The government respectfully submits this supplemental letter in support of its continued application for the detention of defendant Edwin Spears, who is expected to present a bail application on December 7, 2023. The defendant is currently detained pursuant to a detention order entered by Magistrate Judge Pollak. ECF No. 8. As described below, Spears and his co-defendant Leonardo Petrosillo were arrested on a private airplane loaded with cocaine and marijuana that was scheduled to travel to the United Kingdom. Spears, who has both historical and ongoing ties with members of La Cosa Nostra, has the means to flee prosecution and the potential for a substantial mandatory minimum prison sentence gives him every incentive to do so. Accordingly, for the reasons set forth below, no condition or combination of conditions can reasonably protect the public from the defendant or assure his appearance in court, and detention is warranted.

I.    <u>Factual Background</u>

    A.    <u>The Defendant Is Caught Aboard a Private Plane Bound for the United Kingdom with Over 12 Kilograms of Cocaine and Over 500 Pounds of Marijuana</u>

      In the afternoon of November 16, 2023, United States Customs and Border Protection ("CBP") agents conducted a border inspection of a private airplane scheduled for an international departure out of Teterboro Airport in New Jersey to Liverpool John Lennon Airport in the United Kingdom. The only passengers on the plane manifest (and on the plane) were Spears, Petrosillo, Spears's girlfriend, and two additional passengers ("Individual-1" and

"Individual-2").[1]  During the inspection, CBP found substantial quantities of illegal drugs onboard.  Specifically, CBP agents found approximately 12.6 kilograms of suspected cocaine in a small luggage bag, approximately 500 pounds of marijuana divided among 12 large luggage bags, and approximately 1,000 cartridges of suspected tetrahydrocannabinol ("THC") in a cardboard box.  Field testing indicated that the substances were cocaine, marijuana, and THC, respectively.  CBP agents reported that Spears claimed that the drugs were his.

Below are photographs of the drugs that were found inside the luggage:

Cocaine in Small Luggage Bag




---

[1] Based on an information obtained in the course of the investigation, Individual-1 was an adult exotic dancer from Maryland who was offered money to take an Uber from Maryland to New Jersey, board the private airplane, and claim that some of the baggage in which the narcotics were discovered were her bags.  Individual-2 was a friend of Individual-1 who accompanied her for the trip.

Marijuana in Large Luggage Bags[2]






---

[2] The photographs have been redacted to remove identifying information of the two additional passengers on the airplane.

3

THC in Cardboard Box



After CBP uncovered the narcotics, Spears, Petrosillo, Individual-1 and Individual-2 were placed under arrest by officers of the Port Authority of New York and New Jersey Police Department. During searches incident to arrest, agents recovered, among other items, two cellular telephones from Spears and two cellular telephones from Petrosillo, which law enforcement agents with the Federal Bureau of Investigation ("FBI") are in the process of searching pursuant to a search warrant. Petrosillo was also found to be in possession of three fraudulent New Jersey drivers' licenses and two fraudulent Social Security Administration cards.

As detailed in the Complaint, further investigation revealed that Spears and Petrosillo worked together to transport the luggage containing illegal drugs to the private plane in the hours leading up to the seizure. Surveillance footage from a hotel nearby Teterboro Airport ("Hotel-1") showed that both defendants arrived in separate vehicles at the hotel in the middle of the night, at around 4:00 a.m. Below is a photograph of Petrosillo from that surveillance footage:



The surveillance footage shows that Spears and Petrosillo unloaded and transported large luggage bags from the vehicles into the hotel. Below are photographs from the footage of

4

Petrosillo and Spears, respectively, transporting luggage from the vehicles in the Hotel-1, as well as one photograph of the two of them together:







The luggage depicted above resembles the luggage seized several hours later by CBP agents.

Moreover, the footage appears to show Petrosillo removing a cardboard box from a vehicle and then subsequently placing the cardboard box back into the vehicle. The cardboard box resembles the cardboard box in which CBP later discovered the THC described above:

5



A receipt from the hotel, shown below, indicates that Petrosillo checked into Hotel-1 at 4:19 a.m. and provided an address in Bangkok, Thailand in connection with the room reservation:

Less than twelve hours after checking into Hotel-1, Spears and Petrosillo loaded their luggage into three vehicles and traveled from Hotel-1 to Teterboro Airport.[3]

B.   The Defendant's Criminal History and Ongoing Ties to Organized Crime

Spears has a long and serious criminal history dating back to 1992. Notably, in 2010, Spears was arrested in New Jersey on charges of money laundering, bribery, and racketeering offenses. The charges arose out of Spears's participation in a scheme to smuggle drugs and contraband cellphones into a New Jersey state prison. Spears, who was already serving a ten year prison sentence for a prior offense, worked from inside the prison with

---

[3]   As noted in the Complaint, at least one of the vehicles that transported Spears and Petrosillo was based in the Eastern District of New York.

6

members of the Lucchese organized crime family of La Cosa Nostra to bring heroin, cocaine, marijuana, and prepaid cellphones into the prison. According to an affidavit filed in connection with that case, law enforcement agents intercepted numerous recorded calls between Spears and Joseph Perna, a soldier in the Lucchese family, concerning the scheme, and Spears held himself out on these calls as a leader of the Bloods street gang from within the prison. Ultimately, in 2016, Spears pleaded guilty to a heroin distribution offense and was sentenced to 50 months' imprisonment.

The government's ongoing investigation indicates that Spears continues to communicate with members and associates of organized crime. Spears's phone records show recent communications with at least one known soldier of the Bonanno organized crime family and one soldier of the Gambino organized crime family.

II.     Legal Standard

Under the Bail Reform Act, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The Government seeks detention in this case pursuant to 18 U.S.C. § 3142(f)(1)(C) because Spears is charged with a narcotics conspiracy for which the maximum statutory term of imprisonment is more than ten years. Indeed, the nature of the charged offense creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

A finding of risk of flight need only be based on a preponderance of the evidence. See United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (citations omitted). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). "The Court may . . . consider uncharged conduct in assessing the degree of danger posed by a defendant's release." United States v. Persico, No. 21-CR-004669 (HG), 2023 WL 2565206, at *2 (E.D.N.Y. Mar. 17, 2023) (citations omitted). Further, the concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). To put it differently, defendants "pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." United States v. Maratea, No. 18-CR-337-5 (WFK), 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018). In meeting its burden, the government is "not…bound by the rules of evidence … and may proceed by proffer." See United States v. Williams, 654 Fed. Appx. 3, 3 (2d Cir. 2016) (citing Ferranti, 66 F.3d at 542).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant, including whether the defendant is currently on probation, parole, or other release; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the

defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012). Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III. The Defendant Should Be Detained Pending Trial

Spears cannot rebut the presumption in favor of detention in this case. Every factor set forth in the Bail Reform Act weighs in favor of detention.

First, the nature and circumstances of the offense indicate that Spears is involved in dealing serious quantities of controlled substances, which poses a danger to the community. See, e.g., United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) (holding that, for purposes of Bail Reform Act, "the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'"). Further, the amount of cocaine involved in the offense triggers a mandatory minimum sentence of ten years' imprisonment. See 21 U.S.C. § 841(b)(1)(A). The potential for such a lengthy term of imprisonment (especially given the strength of the evidence, discussed below) gives Spears strong incentive to flee. And the circumstances of this particular offense prove that Spears plainly has the means to flee. Spears was caught on a privately-chartered international flight bound for the United Kingdom with significant quantities of cocaine and marijuana. The defendant's access to private international flights raises a serious concern about his ability to flee.

Second, Spears has a long and serious criminal history, including his participation in a drug dealing and smuggling scheme with ties to La Cosa Nostra. Spears committed that crime while already serving a ten-year sentence, demonstrating that even a prison sentence did not stop him from engaging in new criminal conduct.

Third, Spears poses a danger to the public if released. This is not Spears's first drug-related offense, and drug dealing poses a danger to the community. The Second Circuit has recognized that "narcotics trafficking" falls within the definition of "danger" in the Bail Reform Act. Leon, 766 F.2d at 81; see also United States v. Sease, No. 19-CR-378 (PKC), 2020 WL 3618960, at *2 (E.D.N.Y. July 2, 2020) (noting the danger to the community posed by the defendant's release based on "his alleged involvement in a drug trafficking conspiracy"). Further, as explained above, Spears has a history of working with La Cosa Nostra, a violent and transnational criminal enterprise, to commit serious crimes. And his telephone records indicate that he has not put these ties behind him, but remains connected to serious individuals in organized crime.

Fourth, the evidence of Spears's guilt for this offense is overwhelming. He was caught red-handed onboard a private plane loaded with bags of drugs, and acknowledged to law

enforcement officers that the bags were his.  Video surveillance from Hotel-1 shows that, in fact, Spears worked with Petrosillo to gather the drugs at the hotel in the middle of the night before taking them to the airport.  As the Second Circuit has recognized, such strong evidence gives a defendant "considerable incentive to flee."  Millan, 4 F.3d at 1046.

Finally, the bail package proposed by the defendant is insufficient to overcome the presumption of detention in this case.  The defendant is proposing to be released on a $500,000 bond on the signature of three individuals, and to post property owned by one of those individuals as collateral.  However, the government understands that the proposed property is mortgaged, and its owner has approximately $200,000 in equity, i.e., less than half the value of the proposed bond.  See United States v. Zhang, No. 22-CR-208-4 (CBA), 2022 WL 17420740, at *4 (E.D.N.Y. Aug. 3, 2022) (holding that $5 million bond package was insufficient to guarantee defendant's appearance when it was "backed by only $1.4 million in real property and the signature of nine sureties, most of whom have modest incomes"), aff'd, 55 F.4th 141 (2d Cir. 2022).  Moreover, "[g]iven the extremely strong evidence against him and the substantial penalties that he faces," it is unclear what moral suasion these proposed suretors could have over the defendant.  United States v. Valerio, 9 F. Supp. 3d 283, 298 (E.D.N.Y. 2014).  Finally, given the defendant's history of committing crimes even while incarcerated, the defendant cannot be trusted to be released even to home confinement with electronic monitoring.  See Zhang, 2022 WL 17420740, at *6 (noting that "an electronic bracelet could easily be cut off, thus preventing the government from locating defendant, and giving him a substantial head start in fleeing before the government could react to any notification that the device had been removed").

IV.     Conclusion

For the foregoing reasons, the government respectfully submits that the defendant Edwin Spears remain detained.

Respectfully submitted,

BREON PEACE
United States Attorney

By:       /s/
Michael W. Gibaldi
Sean M. Sherman
Assistant U.S. Attorneys
(718) 254-6067/6262

cc:     Clerk of Court (by ECF)
        Nora Hirozawa, Esq. (by ECF and E-Mail)